## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:24-CR-00018-HAB-SLC-1 |
| | ) | |
| LORRAINA MAE RAKES | ) | |

**DEFENDANT LORRAINA RAKES' SENTENCING MEMORANDUM**

Ms. LORRAINA RAKES, pursuant to Fed. R. Crim. P. 32, respectfully submits the following position regarding sentencing. Ms. Rakes submits that the following factors are relevant in support of a below-guideline sentence, but none of them are considered when calculating the sentencing guidelines. Ms. Rakes respectfully reserves the remainder of her argument for the forthcoming sentencing hearing.

## I.    Sentencing Guidelines

This Court, pursuant to 18 U.S.C. § 3553(a)(4), must consider the "kinds of sentences and sentencing range established" by the sentencing guidelines.[1] Ms. Rakes respectfully incorporates her previously filed Motion for Downward Departure. (ECF No. 49.) In the alternative, if this Court denies the Motion for

---

[1] 18 U.S.C. § 3553(a)(4)

Downward Departure, Ms. Rakes respectfully submits that the same facts are grounds for a variance.

## II.    Statutory Sentence

This Court, pursuant to 18 U.S.C. § 3553(a)(3), shall consider the kinds of sentences available. Ms. Rakes pleaded guilty to one count of transferring a firearm to a prohibited person in violation of 18 U.S.C. § 922(d)(1).[2] This offense is a Class C felony with a statutory maximum sentence of fifteen years imprisonment and a $250,000 fine.[3] *There is no mandatory minimum sentence in this case.*

## III.    18 U.S.C. § 3553(a)

### a.    Nature and Circumstance of the Offense and History and Characteristics of the Defendant (18 U.S.C. § 3553(a)(1))

#### 1.    Nature and Circumstance of the Offense

Ms. Rakes vehemently understands that her actions were wrong. She prays that this Court considers that she was in a physically abusive relationship with Mr. Cole, the person she transferred the firearms to.[4] This abuse has been ongoing for years.[5] For at least some of this relationship, Mr. Cole was in control of her finances, and she was unable to report his physical abuse to authorities

---

[2] PSR at 1.
[3] Id.
[4] PSR, ¶35.
[5] PSR, ¶¶ 88-90; 106-108.

because she was afraid she would not be able to care for her child, even though she had visible injuries.[6] While this does not excuse her illegal act, Ms. Rakes respectfully submits that she did it during a tumultuous and painful time. Upon release, Ms. Rakes will no longer associate with Mr. Cole for the sake of her and her son.

### 2. History and Characteristics of Ms. Rakes

Ms. Rakes has lived a life shadowed by neglect, abuse, and severe mental illness, which has curtailed her ability to make prosocial decisions. Ms. Rakes respectfully submits that the Court should consider her need for therapy and mental health treatment when deciding the location and duration of her sentence.

Ms. Rakes lived with her mother until she was eight years old.[7] Ms. Rakes' mother struggled with addiction; she would often hallucinate and cut wires to electronics in the house and padlock Ms. Rakes inside her room as a child.[8] Her mother was also physically abusive and frequently hit Ms. Rakes hard enough to leave marks.[9] Ms. Rakes often lived without food or heat in the winter due to her mother's neglect and was left to fend for herself and her infant sister.[10]

---

[6] PSR, ¶107.
[7] PSR, ¶110.
[8] PSR, ¶¶113-4.
[9] Id.
[10] Id.

Ms. Rakes' mother also had a series of romantic partners that she relied upon for drugs and money.[11] One of Ms. Rakes' mother's romantic partners molested her in her bedroom and threatened her with a knife by cutting open her bed.[12] Ms. Rakes' mother knew and did absolutely nothing to help her daughter.[13]

Due to this neglect, Ms. Rakes' was placed in foster care for several months at age seven or eight, then moved out of foster care to live with her father.[14] Tragically, her father was also incredibly abusive, and Ms. Rakes' situation began to worsen.[15] Her father repeatedly raped her, threatened to kill her and her mother, intending to marry her when she was of age.[16]  This impacted the development of her gender identity; she believed that if she turned into a boy, her father would not notice her as often.[17] Even in her adult life, she is afraid that her father will find her and hurt her, and she has repeated nightmares.[18] Ms. Rakes eventually ran away and began bouncing between her grandmother's care and foster care due to her trauma-borne outbursts.[19]

Studies have shown that physical, emotional, and other abuse in children impairs cognition and is highly correlated with impulsive delinquent behaviors

---

[11] PSR, ¶113.
[12] Id.
[13] Id.
[14] PSR, ¶114.
[15] Id.
[16] Id.
[17] PSR, ¶115.
[18] PSR, ¶118.
[19] PSR, ¶111.

and mental illness.[20] Ms. Rakes' childhood trauma does not excuse her illegal behavior; however, this Court must consider how these facts impacted her ability to make sound, prosocial choices. When all someone has known is disorder and trauma, it is no stretch of the imagination to understand that their history will impact their future decision-making abilities.[21] Healing from this trauma will be instrumental in Ms. Rakes' return to everyday life.

Due to this horrific trauma, Ms. Rakes developed severe mental illnesses, including Bipolar Disorder ("BPD") and Post-Traumatic Stress Disorder ("PTSD").[22] This resulted in her being committed to a mental health institution at a young age.[23]

BPD involves alternating episodes of mania and depression.[24] The APA defines mania as a period of impulsive behavior, erratic thinking, lack of sleep, and elevated energy or irritability lasting for at least seven days.[25] In people with BPD, these episodes are preceded or followed by periods of depression, which

---

[20] Lane Strathearn et al., Long-Term Cognitive, Psychological, and Health Outcomes Associated With Child Abuse and Neglect, 146(4) Pediatrics (2020).
[21] Id.
[22] PSR, ¶¶123-5.
[23] PSR, ¶111.
[24] Ankit Jain et al., Bipolar Disorder: Continuing Education Activity, (2023)
https://www.ncbi.nlm.nih.gov/books/NBK558998/#article-18332.s11 (last visited Feb. 2023).
[25] Soc. Sec. Admin., Mental Disorders—Adult § 12.00, Blue Book,
https://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm (last visited Feb. 2024);
see also Liam Mason, et al., Decision-Making and Trait Impulsivity in Bipolar Disorder are Associated With
Reduced Prefrontal Regulation of Striatal Reward Valuation, 137 Brain 2346, 2346–2355 (2014).

involve fatigue, suicidal ideation, insomnia or hypersomnia, and feelings of worthlessness.[26] Bipolar disorder is unusual, only occurring in 2.8% of people.[27]

BPD has drastic cognitive effects. A plethora of research demonstrates that people with BPD have deficits in cognitive function, which includes working memory, cognitive flexibility (the ability to change strategies in response to feedback), impulse suppression, attention, and more.[28]

One meta-analysis found that BPD patients had deficits in all domains of cognitive functioning.[29] Hypotheses suggest that these deficits are related to differential patterns of neuroactivity.[30] The result is a person who struggles to assess risks accurately, has problems with impulse control, and suffers extreme emotions beyond their control.[31]

Having BPD, Ms. Rakes is unusual compared to much of the U.S. population; she faces unique struggles in processing information and adjusting her behaviors accordingly. Additionally, she requires a significant amount of support to manage symptoms—a robust combination of pharmacological,

---

[26] Id.
[27] Nat'l. Inst. of Mental Health, Bipolar Disorder, Nat'l Inst. of Health, https://www.nihm.nih.gov/health/statistics/bipolar-disorder (last visited Feb. 29, 2024).
[28] Beatrice Bortolato, et al., Cognitive Dysfunction in Bipolar Disorder and Schizophrenia: A Systematic Review of Meta-Analyses, 11 Neuropsychiatric Disease and Treatment 3111, 3111–3125 (2015); see also Emre Bora & Christos Pantelis, Meta-Analysis of Cognitive Impairment in First-Episode Bipolar Disorder: Comparison with First-Episode Schizophrenia and Healthy Controls, 41 Schizophrenia Bulletin 1095, 1095–1104 (2015).

[29] Id.
[30] Liam Mason, et al., supra note 19.
[31] Id.

behavioral, and community therapies. Being treated for his BPD in custody and beyond will be a determining factor in Ms. Rakes' success post-incarceration and thus is vital to her progress towards a normal life. While in custody and on supervised release, Ms. Rakes prays that this Court considers her mental illness at sentencing and in their recommendations for her facility placement.

PTSD is characterized by the American Psychological Association ("APA") as: 1) exposure to death or violence directly or indirectly; 2) intrusive and involuntary thoughts and memories; 3) avoidance of stimuli associated with traumatic events; 4) negative _alterations in cognition_; and 5) marked alterations in arousal and reactivity associated with the traumatic event.[32]

PTSD develops after exposure to terrifying and life-threatening events and is characterized by intense reliving of the traumatic event through disruptive memories and nightmares, avoidance of reminders of the event, and hypervigilance toward potential threats in the environment. _These hallmark symptoms involve alterations to cognitive processes such as memory, attention, planning, and problem solving_…[33]

People with PTSD experience the world differently; their neurological functions differ from healthy individuals.[34] Neural circuits in brain-imaging

---

[32] Am. Psych. Ass'n., Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013).
[33] _See_ Jasmeet P. Hayes _et al._, _Emotion and Cognition Interactions in PTSD: A Review of Neurocognitive and Neuroimaging Studies_, 6 Frontiers in Integrative Neuroscience (2013). Emphasis added.
[34] Hayes _et al._, _supra_ note 12.

studies show abnormal activity in the "anterior cingulate cortex, vmPFC, amygdala, hippocampus, insula, and lateral prefrontal cortex…" affecting decision-making, emotional regulation, and memory.[35] As a result, people with PTSD have poor memory for details, falsely remember new information, and have slow cognitive processing.[36]

### b. Need to Afford Adequate Deterrence to Criminal Conduct (18 U.S.C. § 3553(a)(2)(B))

Criminologists have shown empirically that harsher sentences do not deter the public from committing crimes; instead, the certainty of getting caught has a more significant general deterrent effect. The fact that Ms. Rakes was arrested and convicted will be the most deterrent factor in this case to prospective criminals—not the length or severity of her sentence. A below-guideline sentence will suffice for general deterrence.[37]

### c. Need to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment (18 U.S.C. § 3553(a)(2))

A below-guidelines sentence will reflect the seriousness of the offense, promote respect for the law, and provide just punishment.

---

[35] Id.

[36] Id.

[37] Charles E. Loeffler & Daniel S. Nagin, *The Impact of Incarceration on Recidivism*, 5 Ann. Rev. of Crim 133-152 (2022).

First, those with mental illness often struggle during periods of incarceration, which has the potential to exacerbate symptoms.[38] Even people who did not previously have issues with mental health will experience increased depression during and after incarceration.[39] Of particular concern for Ms. Rakes is that people who have experienced childhood abuse and trauma are more likely to attempt suicide in prison.[40] A below-guidelines sentence will be harsher for Ms. Rakes than a person without mental illness or trauma and, therefore, reflects the seriousness of the offense.

Additionally, a below-guidelines sentence will continue to punish Ms. Rakes long after she is released from custody, as it dramatically reduces employment opportunities that pay a living wage.[41]  Especially with a son to support, Ms. Rakes will acutely feel the consequences of her actions for the rest of her life.

Finally, a sentence within guidelines would not promote respect for the law or provide just punishment due to the exaggerated effect it would have on Ms. Rakes as a mentally ill person. Any term of imprisonment would

---

[38] Timothy G. Edgemon & Jody Clay-Warne, Inmate Mental Health and the Pains of Imprisonment, 9(1) *Society and Mental Health* (2019).
[39] Id.
[40] Id.
[41] Terry-Ann Craigie et al., Conviction, Imprisonment, and Lost Earnings: How Involvement with the Criminal Justice System Deepens Inequality, N.Y.U. (2020).

significantly impact the stability of Ms. Rakes' son, as the incarceration of a

primary parent has drastic effects on a child's mental and emotional health.[42]

### d. Need to Protect the Public from Ms. Rakes's Future Criminal Conduct (18 U.S.C. § 3553(a)(2)(C))

Ms. Rakes respectfully submits that her mental illness and abusive

relationship greatly influenced her to commit the offense at bar. Ms. Rakes is

dedicated to healing herself while in custody, which will allow her to lead a

more stable life when she is released.

### e. Substance Abuse and Mental Health Treatment or Vocational Training (18 U.S.C. § 3553(a)(2)(D))

As detailed above, Ms. Rakes needs serious mental health services while in

custody to combat the inevitable effects imprisonment has on the mentally ill.

Additionally, Ms. Rakes is excited to pursue any vocational training available to

her in custody, as she hopes to continue to support herself and her son when she

is released.

### f. Need to Avoid Unwarranted Sentencing Disparities (18 U.S.C. § 3553(a)(6))

During the last five fiscal years (FY2019- 2023), fifty-nine defendants

whose primary guideline was §2K2.1 had a Final Offense Level of twenty-four

---

[42] Julie Poehlmann, Children's Family Environments and Intellectual Outcomes During Maternal Incarceration, 67(5) J. of Marriage and Family, 1275-85 (2005).

and a Criminal History Category of III, after excluding defendants who received a §5K1.1 substantial assistance departure. Of the fifty-eight defendants (98%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was sixty-four months, and the median length of imprisonment imposed was sixty-three months.

**g. Need for Restitution and Victim Compensation (18 U.S.C. § 3553(a)(7))**

Restitution is not applicable in this case.

**IV. Letters In Support**

Ms. Rakes respectfully submits the attached two letters in support. In these letters, the Court will see that despite her rough past, Ms. Rakes has a family that is willing to support her and her son through this tumultuous time in her life.

**V. Request for Location**

If she is to serve a custodial sentence, Ms. Rakes respectfully requests to be placed as close to her son as possible.

**VI. Conclusion**

Based on the foregoing assertions and argument, Ms. Rakes prays that the Court consider a below-guidelines sentence.

Date:             February 6, 2025

Respectfully submitted,

_**s/Serguel M. Akiti**_
Serguel M. Akiti, Esq.
D.C. Bar # 1631134
sakiti@lowtherwalker.com

_**s/Murdoch Walker II**_
Murdoch Walker, II, Esq.
Ga. Bar # 163417
mwalker@lowtherwalker.com

Lowther | Walker LLC
101 Marietta St., NW, Ste. 3650
Atlanta, GA 30303
404.496.4052
www.lowtherwalker.com

Attorneys for Defendant
Lorraina Rakes

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:24-CR-00018-HAB-SLC-1 |
| | ) | |
| LORRAINA MAE RAKES | ) | |

## CERTIFICATE OF SERVICE

I certify that on February 6, 2025, I electronically filed the foregoing

DEFENDANT LORRAINA RAKES' SENTENCING MEMORANDUM with the

Clerk of the United States District Court for the Northern District of Indiana by

way of the CM/ECF system, which automatically will serve this document on

the attorneys of record for the parties in their case by electronic mail.

Date:        February 6, 2025

Respectfully submitted,

*s/Serguel M. Akiti*
Serguel M. Akiti, Esq.
D.C. Bar # 1631134
sakiti@lowtherwalker.com

Lowther | Walker LLC
101 Marietta St., NW, Ste. 3650
Atlanta, GA 30303
404.496.4052
www.lowtherwalker.com